PER CURIAM:
This claim was filed by the Wayside United Methodist Church and the Rev. Gary R. Phillips. The claimants request an award of $3,336.51 for flood related damages to personal property and a gravel parking lot. The claimant Wayside United Methodist Church is the owner of a church and parsonage located adjacent to Isner Creek Road near Elkins in Randolph County. Claimant Garry R. Phillips resided with his family in the parsonage. The claimants allege they suffered damages due to the respondent’s negligent design and maintenance of a culvert under Isner Creek Road. They contend the culvert was too small to direct the appropriate flow of water into a drainage channel. In addition, the claimants contend this problem was compounded by debris which had not been removed from the culvert. The respondent asserts that it had no notice of any complaints concerning the culvert, and the flood occurred due to a combination of heavy rains and melting snow.
During the early morning hours of February 9, 1994, Dorothy Phillips, the wife of Rev. Phillips, was in the Church parsonage. Upon investigation a noise in the basement, she discovered twenty three and a half inches of water on the basement floor. Mrs. Phillips searched for the source of the water and determined it was coming from a culvert located on Isner Creek Road. She testified that the water was not flowing through the culvert. Instead, the water was flowing across the road and into the parsonage. Mrs. Phillips called the respondent several times during the course of the flood to inform the respondent of the problem.
Later that morning, Kimberly Rice and Jerrod Phillips arrived at the parsonage and helped Mrs. Phillips remove items from the basement. They also attempted to divert the water away from the parsonage and pump water out of the basement. Both Ms. Rice and Mr. Phillips testified that the culvert was not functioning properly. They explained that water was backing up at the culvert inlet and flowing across Isner Creek Road.
Lewis Gardner, an assistant supervisor for the respondent in Randolph County, is responsible for general maintenance of roads and culverts, including at issue in this clam. Mr. Gardner testified that a rainstorm began in the Elkins area on February 8,1994, at 1:00 p.m. The rain continued to fall until 12:00 noon on February 9, 1994. As a result of the storm, the Elkins area received approximately three and a half inches of rain. The rain caused numerous flooding problems throughout the region. In response to these problems, Mr. Gardner assigned road crews to perform culvert cleaning operations beginning the evening of February 8,1994. The numerous flooded areas and limited number of maintenance personnel required respondent to concentrate road work efforts on the highest priority roads before working on lower priority roads. Therefore, road crews were unable to answer Mrs. Phillips’ complaint until three hours after receiving her first call.
On the day after the flood, Ray Bishoff, the chairman of the trustees of the Church, visited the Church property and inspected the damage. He took several photographs of the flooded area including the drainage culvert, the normal drainage channel, Isner Creek Road, the Church *152 parsonage, and washed out areas of the parking lot. The photographs and witness testimony indicate that water accumulated behind the uphill side of the Isner Creek Road embankment during the flood. When the water reached the top of the embankment, it flowed across the road, down the opposite embankment, across the driveway and parking lot, and into the parsonage basement. The photographs also indicate the elevation of Isner Creek Road is higher in elevation than the foundation of the parsonage.
As a result of the flood, portions of the parking lot were washed out. The parking lost has since been regraded, and 100 tons of stone had been placed on the parking lot. The total cost of repairing the parking lot was $750.00. Personal property located in the basement of the parsonage was also damaged by the flood waters. An itemized list of the damaged articles including their replacement value was entered into evidence. The total damage to personal property was estimated at $2,586.51.
Although Rev. Phillips as not at the parsonage when the flood occurred, he was aware of the weather conditions on and before February 9, 1994. He testified that the Elkins area had experienced a long hard winter, and had received a considerable amount of snow. Rev. Phillips added that when the flood occurred the temperature was relatively warm, the soil was saturated, and a considerable amount of rain had fallen. Neither Rev. Phillips or Mr. Bishoff were aware of any prior flood damage at the parsonage prior to February 9,1994.
The standard for determining whether the respondent is liable for flood related damages was articulated by the Court in Haught v. Dept. of Highways, 13 Ct.Cl. 237 (1980).
To hold the State responsible for the damage to claimant’s property caused by the flooding, it is necessary to find that the respondent was negligent in failing to protect the property from foreseeable flood damage. Adequate drainage of surface water must be provided, and culverts to carry away the drainage must be maintained in a reasonable state of repair by the State.
When applying this standard in the prior decisions, the Court has considered various factors to determine whether the flood damage was foreseeable. These factors include: Whether an unusually heavy rainfall occurred prior to the flood, Hudson v. Dept. of Highways, 15 Ct. Cl. 183 (1983); whether a water line break contributed to the flood waters, Burger v. Dept. of Highways, 16 Ct.Cl. 41 (1986); and whether the respondent was informed of a drainage problem prior to the flooding, and refused to timely correct the problem, Johnson v. Dept. of Highways, 13 Ct.Cl. 380 (1981).
After a careful review of the record in this claim, the evidence does not establish that respondent was negligent. The testimony of witnesses for both parties indicates that there was a heavy rainstorm in the Elkins area shortly before the flood. Other factors such as saturated soil conditions and melting snow also contributed to the volume of surface water runoff during the flood. *153 In addition, there was no indication of any prior flooding problems on the Church property which would have placed the respondent on notice of a problem. The damage suffered by the claimants is unfortunate, but under the circumstances of this claim the Court finds that the respondent was not negligent in the design or maintenance of the culvert.
Accordingly, the Court is of the opinion to and does deny this claim.
Claim disallowed.